UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**Robert D. Lipka,**

         **Plaintiff,**         **Hon. Hugh B. Scott**

                       **03CV381A**

         **v.**              **Report**
                       **&**
                    **Recommendation**

**John E. Potter, Postmaster General,**

         **Defendant.**

---

  Before the Court is the defendant's motion to dismiss and for summary judgment (Docket No. 13).

### Background

  The plaintiff, Robert D. Lipka ("Lipka"), is employed by the United States Postal Service ("USPS"). He alleges that he was discriminated against because of a disability in violation of the Rehabilitation Act of 1973 (29 U.S.C. §§791, 794). Lipka also asserts that he was retaliated against because he filed a claim with the Equal Employment Opportunity Commission ("EEOC") in violation of Title VII (42 U.S.C. §2000e et seq.).

  According to Lipka, he worked as a Window Distribution Clerk (the plaintiff's "bid position") at the Hiler Post Office in Buffalo, New York. (Docket No. 1 at ¶ 6). At some point, Lipka allegedly developed chronic and severe impingement syndrome of the right shoulder and impingement syndrome of the left shoulder and sever chronic depression. (Docket No. 1 at ¶ 9).

He claims that since 1995 he was "warned" that if he couldn't do his job, he should quit (Docket No. 1 at ¶ 11). He also asserts that he has been submitting medical documentation of his alleged disability since 1996. (Docket No. 1 at ¶ 12). The plaintiff claims that on January 27, 1998, he was informed that he would not longer be on limited duty until he provided "sufficient medical documentation." (Docket No. 1 at ¶ 13). Lipka asserts that this request was made after he had engaged in protected activity by making an informal complaint of discrimination on or about September 26, 1007. (Docket No. 1 at ¶ 14). Lipka alleged that he obtained information from his physician and provided it to the USPS. Notwithstanding that information, the USPS informed Lipka that his light duty assignment was terminated due to insufficient medical evidence of the restrictions Lipka claimed. (Docket No. 1 at ¶¶ 15-16). According to Lipka, he requested less strenuous duty, but was informed by his supervisor that if he "could not work" the he "should quit." (Docket No. 1 at ¶ 19). He claims that he requested that he be assigned to do "work in the box section and not pitch mail" but that this requested accommodation was refused. (Docket No. 1 at ¶ 21). Lipka also claims that he was denied breaks given to non-disabled employees. He alleges that on March 3, 1998, he was served with a two week suspension (then reduced to one week) after being charged with improper conduct. (Docket No. 1 at ¶ 28).[1] On that same date,

---

[1] The EEOC determined that the USPS had articulated a legitimate non-discriminatory reason for the issuance of the discipline: that on February 11, 1998, Lipka was "verbally abusive" to two postal customers by yelling "at an elderly woman that [Lipka] waited on, and argued with another customer who came to her defense, telling him to 'get a life.' [Lipka] struck the elderly women with [his] pen. While retrieving [his] pen from the women, [Lipka] grabbed if from her hand with such force that she lost her balance." (Docket No. 27, Exhibit D at page 9). The motion papers submitted by the plaintiff do not controvert this recitation of facts. At his deposition, the plaintiff denied yelling at the customers. He also stated that he did not, in fact, serve any suspension due to the incident. (Docket No. 14, Exhibit A [referred to as the "Lipka Deposition"] at page 101).

Lipka was transferred to the Williamsville USPS branch which required the plaintiff to drive farther from his home and changing his work hours. (Docket No. 1 at ¶ 29).

Based on the above, Lipka asserts that his rights under the Rehabilitation Act of 1973 were violated in that the USPS intentionally discriminated against him due to his disability (Docket No. 1 at ¶¶ 32-35) and that the USPS retaliated against him after he filed an EEOC complaint in violation of Title VII[2] (Docket No. 1 at ¶¶ 36-40).

The defendants contend that Lipka developed problems with his right shoulder in March of 1996 which limited him from lifting in excess of 15 pounds and from repetitive activity involving his right hand above his shoulder. According to the USPS, although Lipka never made any formal application for light duty work, he was not required to lift packages in excess of 15 pounds and was afforded opportunities, when available, to work at the customer service window and perform clerical duties. (Docket No. 15 at page 2). The USPS maintains that the plaintiff subsequently developed problems with his left shoulder, and that on February 12, 1998, Lipka's treating physician indicated that not only repetitive right, but any bilateral hand above shoulder activity, as well as repetitive "to and fro" motions were restricted. On or about February 27, 1998, the USPS asserts that it was informed that the plaintiff was restricted from performing distribution work, including any sorting of mail. (Id.)

According to the USPS, these restrictions precluded the plaintiff from performing most duties required by his bid position. In response, the USPS provided the plaintiff with what it considered a reasonable accommodation by transferring the plaintiff to the Williamsville Post Office, where work was available which did not exceed his medical restrictions.

---

[2]   42 U.S.C. § 2000e et seq.

The defendant seeks both dismissal and summary judgment under Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure.  The defendant asserts that the plaintiff cannot establish a prima facie case of discrimination under the Rehabilitation Act because he cannot meet his burden to show that he is "otherwise qualified to perform the duties of a window distribution clerk." Further, the defendant argues that the plaintiff cannot establish a prima facie case of retaliation under Title VII.  The USPS also maintains that the plaintiff has failed to exhaust his remedies as to any claims relating to alleged discrimination alleged to have occurred more than 45 days prior to plaintiff's March 9, 1998 EEOC complaint.

**Standard of Review**

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court cannot dismiss a complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed.R.Civ.P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  In considering such a motion, the Court must accept as true all of the well pleaded facts alleged in the complaint. Bloor v. Carro, Spanbock, Londin, Rodman & Fass, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F.Supp.2d 123 (N.D.N.Y., 2002).

With respect to the defendant's motion for summary judgment, such relief is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351(2nd Cir. 2003); Fed.R.Civ.P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.1997) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248, (1986)). While the moving party must demonstrate the absence of any genuine factual dispute, (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts... . [T]he non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87(1986); McCarthy v. American Intern. Group, Inc., 283 F.3d 121 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir.2002).

**Disability Under the Rehabilitation Act of 1973**[3]

The Rehabilitation Act, as amended, defines a "disabled individual" as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B).  In determining whether an individual has a disability for purposes of the Rehabilitation Act, the Second Circuit has adopted the three-step approach taken by the Supreme Court in Bragdon v. Abbott, 524 U.S. 624 (1998). See Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir.1998).  Under the Bragdon-Colwell analysis, the plaintiff must first show that he suffers from a physical or mental impairment. See Colwell, 158 F.3d. at 641 citing Bragdon, 524 U.S. at 631.   Second, the plaintiff must identify the activity claimed to be impaired and establish that it constitutes a "major life activity."  Third, the plaintiff must show that his impairment "substantially limits" the major life activity previously identified. Id.  Major life activities include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 28 C.F.R. § 41.31(b)(2); 45 C.F.R. § 84.3(j)(2)(ii); 24 C.F.R. § 100.201(b). The function of caring for one's self encompasses normal activities of daily living; including feeding oneself, driving, grooming, and cleaning home. Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 871 (2d Cir.1998). In addition, the Supreme Court has recently clarified that the identified major life activity must be "of central

---

[3]   The analysis of such claims under the Rehabilitation Act is virtually identical to that under the Americans with Disabilities Act ("ADA"). Apart from the Rehabilitation Act's limitation to denials of benefits "solely" by reason of disability and its reach of only federally funded--as opposed to "public"--entities, the reach and requirements of both statutes are the same. Weixel v. Board of Educ. of City of New York, 287 F.3d 138 (2d. Cir. 2002); Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 113 (2d Cir.2001). Thus, case law regarding the two statutes is interchangeable except as to the identified distinction.

importance to daily life." <u>Toyota Motor Mfg. v. Williams</u>, 534 U.S. 184 (2002).

**Exhaustion**

The defendant argues that the plaintiff is time barred from pursuing claims regarding events that allegedly transpired prior to January 23, 1998 (45 days prior to Lipka's March 9, 1998 contact with the EEOC).

Title 29 of the Code of Federal Regulations ("C.F.R"), §1614.105(a)(1), requires a plaintiff bringing claims against the federal government under the Rehabilitation Act to exhaust administrative remedies within a certain time frame prior to bringing a claim in federal court. Failure to exhaust in a timely manner results in the claims being time-barred (subject to certain equitable tolls). Specifically relevant in the instant matter, is the provision which requires that an employee must first seek EEOC counseling within forty-five days of the allegedly discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1); <u>Boos v. Runyon</u>, 201 F.3d 178, 181 (2d Cir.2000)(Failure to bring a claim within the 45-day time period usually precludes the claimant from pursuing a discrimination claim in federal court.)

Lipka does not dispute that he is seeking to pursue claims regarding events that occurred prior to January 23, 1998, but instead argues that such are nevertheless actionable under the "continuing violation" theory. Prior to the Supreme Court's holding in <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101 (2002), the continuing violation-doctrine permitted recovery for discriminatory conduct that occurred outside of the applicable limitations period if the conduct was part of a "practice or policy" of discrimination. *See* <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 359 (2d Cir.2001). However, <u>Morgan</u> substantially restricted the scope of the

continuing violation by holding that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 114. The Court went on to identify "termination, failure to promote, denial of transfer, or refusal to hire" as examples of conduct that constituted a "discrete discriminatory act." Morgan, 536 U.S. at 114. The Second Circuit has held Morgan applicable to cases, such as the instant case, wherein the plaintiff alleges a refusal to make an accommodation based upon religious practice. Elmenayer v. ABF Freight System, Inc., 318 F.3d 130 (2003), 134 -135 (2d. Cir. 2003)(An employer's rejection of an employee's proposed accommodation for religious practices does not give rise to a continuing violation. Once the employer has rejected the proposed accommodation, no periodic implementation of that decision occurs, comparable to the weekly cutting of a payroll check ... . The rejection of a proposed accommodation is a single completed action when taken, quite unlike the "series of separate acts" that constitute a hostile work environment and "collectively constitute" an unlawful employment practice. Although the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that Morgan offered as examples of a discrete act.). This rationale has also been applied in cases alleging a failure to make a reasonable accommodation under the ADA. Stuevecke v. New York Hosp. Medical Center of Queens, 2003 WL 22019073, *4 (E.D.N.Y.,2003)(failure to accommodate under ADA does not constitute a "continuing violation."). It appears that, for practical purposes, the continuing violation doctrine applies only to cases of alleged hostile work environment or other claims which involve a series of acts necessary to comprise the alleged discriminatory act. Morgan, 536 U.S. at 117; Nakis v. Potter, 2004 WL 2903718, *11 (S.D.N.Y. 2004). A failure

to reasonably accommodate an employee occurs the first instance when an employer refuses to make an accommodation to an employee that otherwise qualifies under the Rehabilitation Act or the ADA.

The plaintiff has not demonstrated a basis warranting the application of the continuing violation doctrine in this case. Thus, to the extent the plaintiff's claims are based upon events which occurred prior to January 23, 1998, the defendant's motion for summary judgment is granted.

**Rehabilitation Act Claim**

Section 504 of the Act provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
> 29 U.S.C. § 794(a)

In order to prevail on a claim under this section, a plaintiff must establish (1) that he is a "handicapped person" under the Act, (2) that he is "otherwise qualified" for the position sought, (3) that he is being excluded from the position solely by reason of his handicap, and (4) that the position exists as part of a program or activity receiving Federal financial assistance. Sedor v. Frank, 42 F.3d 741, 746 (2d. Cir. 1994) citing Doe v. New York University, 666 F.2d 761, 774-75 (2d Cir.1981). If proof of any of the four elements is lacking, the claim

must fail. *See, e.g.,* Heilweil v. Mount Sinai Hospital, 32 F.3d 718 (2d Cir.1994) (affirming summary judgment against plaintiff on ground that her handicap was not within the scope of the Act); Gilbert v. Frank, 949 F.2d at 641-44 (affirming post-trial judgment against plaintiff for failure to show, *prima facie,* that he was "otherwise qualified").

In the instant case, the defendant contends that Lipka has not, and cannot, establish that he is "otherwise" qualified to perform the essential duties of the Window Distribution Clerk position with box section duties, with or without reasonable accommodation. (Docket No. 15 at pages 10-11).

"Essential functions" are defined under EEOC regulations to mean the " 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.' " Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir.1997) (citing 29 C.F.R. § 1630.2(n)(1) (1996)). In approaching this inquiry, "[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position." D'Amico v. City of New York, 132 F.3d 145, 151 (2d Cir.1998) (citing Doe v. New York Univ., 666 F.2d 761, 776 (2d Cir.1981)). A reasonable accommodation can never involve the elimination of an essential function of a job. See also Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir.1991); Shannon v. New York City Transit Authority, 332 F.3d 95, 100 (2d. Cir. 2003).

The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that he can perform the job's essential functions. Jackan v. New York State Dept. of Labor, 205 F.3d 562, 566 (2d. Cir. 2000); Teahan v. Metro-North Commuter R.R., 951 F.2d. 511, 514-515 (2d. Cir. 1991). In the instant case, the plaintiff does not even attempt to demonstrate that he can

perform the essential functions of the Window Distribution Clerk position for which he was hired, but instead argues that the essential functions of the position have never been defined. (Docket No. 23 at page 11). This argument is contrary to the record in this case. Indeed, the exhibits submitted by the plaintiff in response to the instant motion identify the essential duties associated with the distribution clerk position as:

> Clerks sort and distribute mail to post offices and to carrier routes in accordance with established schemes. They may also perform a variety of services at public windows of post officers, post office branches or stations. The perform related duties as assigned. The work involves continuous standing, stretching, and reaching. Clerks may be required to handle heavy sacks of letter mail or parcel post weighing up to 70 pounds.

(Docket No. 27, among documents included in Exhibit I, identified as Bargaining Unit Qualification Standard). Moreover, consistent with the above, the USPS forwarded a letter to Lipka's physician identifying the job functions associated with the plaintiff's position. (Docket No. 14, Exhibit D). These functions included: (1) distribution work: lift and transport parcels and buckets of mail weighing between 1 and 70 pounds; (2) push mail transportation equipment: metal cages loaded with mail, four wheel utility carts from dock areas to distribution areas; (3) sorting mail: placing letters and magazine size items into distribution cells often overhead and to the side of employee; letters are held in hand, magazines cradled in arm approximately 6" in depth; (4) filing of records; (5) retail: selling of postage and related items over retail window, accepting packages up to 70 pounds in weight, transporting these to mail transportation equipment; (6) bending and stooping to open/close collection boxes; and (7) answer telephones and handle consumer difficulties/inquiries. (Docket No. 14, Exhibit D). At his deposition, the

plaintiff testified as to the time he expended performing the various job functions associated with his Window Distribution Clerk position at the Hiler postal facility. These functions included "sorting mail in the back room" anywhere from two to six hours a day depending upon the volume that came in. (Docket No. 14, Appendix, Exhibit A [referred to as the "Lipka Deposition"] at page 20-21). He would also sort parcels two to three hours a day, depending on volume. (Lipka Deposition at pages 21-22).

The record in this case establishes, as a matter of law, that the plaintiff cannot perform essential functions of his Window Distribution Clerk position. The restrictions placed upon Lipka prevent him from performing any of the sorting functions, and preclude his lifting packages weighing more than 15 pounds. The plaintiff's own testimony establishes that these functions took up a substantial portion of the work day for a Window Distribution Clerk. Although the USPS did attempt to make some accommodations between 1996 and 1998, the undisputed evidence demonstrates that as of February 27, 1998 (if not before), when Lipka's physician restricted him from performing any sorting functions, and further restricted him from performing other distribution functions, the plaintiff was not capable of performing the essential functions of the Window Distribution Clerk, with or without an accommodation.

The plaintiff argues that he need only demonstrate that he could perform the essential functions of any position he "desired" to meet his burden under the Rehabilitation Act. (Docket No. 23 at page 12). Although the Court is not persuaded that the standard is as broad as asserted by the plaintiff, the plaintiff must establish that there was an existing vacant position at the Hiler station, with he could have been assigned notwithstanding his medical restrictions. Jackan, 205 F.3d. at 267-268 (the plaintiff bears the burden on the question of whether a suitable vacancy

existed); Mengine v. Runyon, 114 F.3d. 415, 420 (3d. Cir. 1997)(the employee has the duty to identify a vacant, funded position whose essential functions he is capable of performing). Further, an employer need not create a new job in order to accommodate a disabled employee. Bonner v. New York State Electric & Gas Corp., 195 F.Supp. 2d 429, 435 (W.D.N.Y. 2002). Lipka has failed to identify any specific existing, vacant position at Hiler prior to his relocation to the Williamsville facility. In this regard, the plaintiff points only to a Window Clerk Trainer position that became vacant in the Hiler facility in April of 2000, more than a year *after* he had already been reassigned due to his medical restrictions. (Docket No. 35, Exhibit UU).

The plaintiff's transfer to the position at the Williamsville facility, which did not effect the plaintiff's pay grade, constitutes a reasonable accommodation in this matter. The plaintiff concedes that none of his duties at the Williamsville facility exceed his medially imposed restrictions. Lipka argues that the USPS was required to subtract those functions – including all sorting functions, as well as distribution functions involving the need to manipulate packages of more than 15 pounds – so that he could remain in his Window Distribution Clerk position at Hiler. Given the plaintiff's own testimony as to the role of those functions in the workday of a Window Distribution Clerk, such would require the USPS to eliminate an essential function from the position and is tantamount to requiring the USPS to create a new position for the plaintiff. At the same time the plaintiff protests his transfer from the Hiler facility, the plaintiff argues that *the failure* of the USPS to transfer him to a different facility *prior to* March of 1998 constitutes a failure to properly accommodate him. (Docket No. 24 at ¶ 162). However, the plaintiff has

failed to demonstrate that he has ever requested transfer as an accommodation at any time.[4]

The plaintiff has failed to establish a question of material fact as to whether he was otherwise qualified to perform the Window Distribution Clerk position, with or without a reasonable accommodation.  Thus, the plaintiff has failed to establish a *prima facie* case of discrimination under the Rehabilitation Act.  The defendant's motion for summary judgment as to the plaintiff's claim under the Rehabilitation Act is granted.

**Retaliation Claim**

The plaintiff also asserts a claim of retaliation under Title VII.  "To establish a prima facie case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 134 (2d Cir.1999)(quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998) (internal quotation marks omitted).

In response to the instant motion, the sole allegation articulated by the plaintiff with respect to the retaliation claim is that he was required to work in the back room of the Hiler Station pitching mail several hours a day in violation of his restrictions after he filed an EEOC charge in 1997.  (Docket No. 23 at page 21). The Court notes that the plaintiff does not make this allegation in the complaint, but instead, only links the defendants' requirement that he provide

---

[4] In any event, as discussed above, the plaintiff is time-barred from pursuing claims that occurred prior to January 23, 1998.

"sufficient medical documentation" to remain on limited duty to the filing of his 1997 request for informal EEOC counseling. (Docket No. 1 at ¶¶14-15). Moreover, the plaintiff's affidavit submitted in response to the instant motion, as well as his deposition testimony, both reflect that he was alleged to be made to perform these sorting functions in the back room at the Hiler facility in violation of his restrictions *prior* to his 1997 filing. ((Docket No. 24 at ¶¶ 3, 12, 20, 102; Lipka Deposition at pages 22-23). Therefore, the plaintiff has not demonstrated a nexus between the alleged retaliatory conduct and the 1997 filing.

Because the plaintiff has failed to establish a *prima facie* case in this regard, the defendant's motion for summary judgment with respect to Lipka's Title VII retaliation claim is also granted.

## Conclusion

Based on the above, it is recommended that the defendant's motion for Summary Judgment be granted, and that the complaint be dismissed in its entirety.

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                                 /s/ Hugh B. Scott
                                                 United States Magistrate Judge
                                                 Western District of New York

Buffalo, New York
March 28, 2006